723 A.2d 556

**GENESIS HEALTH VENTURES, INC.**

v.

**Jonathan MULLER Personal Representative of the Estate of Robert Gustav Muller.**

**No. 616, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 29, 1999.

David F. Clinnin (Kenneth L. Rosen, on the brief), Towson, for appellant.

John M. Quinn (Anne W. McLindon and Quinn, McAuliffe, Rowan & Falconer, on the brief), Rockville, for appellee.

Argued before DAVIS, HOLLANDER and MARVIN H. SMITH (retired, specially assigned), JJ.

DAVIS, Judge.

Appellant, Genesis Health Ventures, Incorporated, obtained an affidavit judgment for $18,343.26 in the District Court for Montgomery County on March 21, 1997 against Robert Gustav Muller. The judgment was the result of Muller's failure to pay appellant for services provided to his wife at appellant's nursing home facility. After Muller's death on April 12, 1997, appellant filed a claim with the Register of Wills for Montgomery County against appellee, the Estate of Robert Gustav Muller, for $18,343.26. Appellee neither paid the claim nor filed a Notice of Disallowance to the claim.

On September 23, 1997, appellant filed a petition with the Register of Wills for allowance of the full amount of the claim

and appellee filed a response on November 7, 1997. The Circuit Court for Montgomery County, wherein the judge sat as the Orphans' Court, held a hearing on December 19, 1997 concerning appellant's Petition for Allowance. Following the hearing, the court considered memoranda submitted by the parties and, on February 25, 1998, issued an order and opinion denying appellant's claim. Appellant timely filed notice of appeal on March 25, 1998 and presents two questions for our review that we restate as follows:

I. Was the denial of appellant's Petition for Allowance of a claim within the jurisdiction of the Orphans' Court?

II. Did the Orphans' Court err by not giving *res judicata* effect to the district court's affidavit judgment and denying appellant's claim?

We answer the first question in the negative, thereby reversing the court's judgment and remanding for further proceedings consistent with this opinion. Consequently, we decline to discuss appellant's second question presented.

## FACTS

On or about September 22, 1994, appellant's nursing home facility, Layhill Center, admitted Robert Gustav Muller's wife, Mary A. Gill, as a resident. At the time of admission, Muller signed two documents, both of which were countersigned by a facility representative. First, as his wife's "sponsor," Muller agreed to long-term care by signing the "Maryland Admission Agreement." Additionally, Muller initialed and signed a twelve-paragraph document that acknowledged his rights and obligations as the sponsor. Gill spent approximately one year at the nursing home before her death in 1995.

Following Gill's death, appellant was unsuccessful in collecting the $15,744.33 of debt incurred during her period of residence. Appellant filed suit, including an affidavit and supporting documentation, against Muller in the district court for the services provided and attorney's fees, which together totaled $18,343.26. Muller, however, failed to appear or otherwise defend himself at the February 26, 1997 trial. Because

of Muller's absence from the trial, appellant moved for an affidavit judgment that the district court granted on March 21, 1997.

On April 12, 1997, Muller died and, on April 23, 1997, appellant filed a claim with the Register of Wills for Montgomery County against appellee in the amount of $18,343.26. Appellee did not file a Notice of Disallowance in response to appellant's claim. After failing to obtain payment, appellant filed a Petition for Allowance on September 23, 1997 to which appellee responded on November 7, 1997.[1] The Register of Wills set a hearing on the petition for December 19, 1997 in the Circuit Court for Montgomery County, the judge sitting as the Orphans' Court. After oral arguments, the lower court considered legal memoranda submitted by the parties and, on February 25, 1998, issued an order and opinion denying appellant's claim. Appellant timely noted an appeal to this Court.

## DISCUSSION

■ Appellant asserts that the denial of its Petition for Allowance was not within the jurisdiction of the Orphans' Court. Before addressing the merits of appellant's jurisdictional contention, we shall explain briefly the procedural principles concerning orphans' courts. A judge of the Circuit Court for Montgomery County, pursuant to a constitutional grant of authority, may sit as an Orphans' Court. *See* MD. CONST. art IV, § 20(b). When a trial judge sits as a judge on the Orphans' Court, however, the judge does not exercise circuit court authority. *See Barter Systems, Inc. v. Rosner,* 64 Md.App. 255, 261–62, 494 A.2d 964 (1985). Instead, the judge "possesses no more authority in that case than that conferred by the legislature upon the Orphans' Courts of this State." *Barter Systems,* 64 Md.App. at 262, 494 A.2d 964.

---

1. Meanwhile, in the district court, appellee had moved for reconsideration of the affidavit judgment because Muller never read the Notice of Entry of Affidavit Judgment that the court sent to him. The district court, however, denied appellee's motion on December 16, 1997.

█ Turning to both the authority of the Orphans' Court and appellant's contention that the trial court lacked jurisdiction to adjudicate its claim, we note the following:

> It must be remembered that Orphans' Courts are not courts of general jurisdiction; on the contrary, they are courts of special and limited jurisdiction only, and they cannot, under pretext of incidental or constructive authority, exercise jurisdiction not expressly conferred by law.

*Id.* (quoting *Crandall v. Crandall,* 218 Md. 598, 600, 147 A.2d 754 (1959)). Because the lower court was limited to the authority "expressly conferred by law," it is necessary to examine an Orphans' Court's statutory authority.[2]

█ Section 2–102(a) of the Estates and Trusts Article addresses such authority. It states:

> (a) *Powers.*—The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent. . . .

MD.CODE (1991 Repl.Vol., 1997 Supp.), EST. & TRUSTS (E.T.) § 2–102(a). In a prior interpretation of this enumerated power, we concluded that "[t]he [O]rphans[']][C]ourt has jurisdiction to consider and adjudicate claims against an estate." *Barter Systems,* 64 Md.App. at 262, 494 A.2d 964 (citing *Schaefer v. Heaphy,* 45 Md.App. 144, 154, 412 A.2d 107 (1980)). Moreover, the decision of the Orphans' Court is binding and is

---

2. Prior to 1969, Article 93 of the Annotated Code of Maryland governed the jurisdiction of the Orphans' Courts. In 1965, however, the Register of Wills of Maryland sponsored a resolution that requested appointment of a gubernatorial commission to study and revise Maryland testamentary law. The General Assembly enacted, Joint Resolution No. 23 of 1965, and Governor Tawes appointed a commission headed by William L. Henderson, former Chief Judge of the Court of Appeals. In The Second Report of the Henderson Commission, dated December 5, 1968, the commission proposed a comprehensive recodification and revision of Maryland testamentary law. Chapter 11 of the Acts of 1974 created the Estates and Trusts Article. The procedures and powers of the Orphans' Courts, however, underwent minimal change. *See* Shale D. Stiller and Roger D. Redden, *Statutory Reform in the Administration of Estates of Maryland Decedents, Minors and Incompetents,* 29 Md. L.Rev. 85, 90 (1969).

enforceable on the parties. *See Schaefer*, 45 Md.App. at 153–54, 412 A.2d 107. Thus, despite the limited nature of an Orphans' Court's power, Maryland law clearly allows the court to adjudicate a claim against an estate.

■ Appellant argues, however, that, because the March 21, 1997 affidavit judgment converted its claim into a final judgment, the lower court's jurisdiction was limited to a determination of whether the judgment was valid and unbarred. We agree. Appellant obtained a judgment for $18,343.26 in the district court, and the court erred as a matter of law by setting aside the judgment. In *Millison v. Ades of Lexington, Inc.*, 262 Md. 319, 328, 277 A.2d 579 (1971), the Court of Appeals held:

> A judgment by default, while it may require extension by way of proof of damages ... is still final in respect of the question of the liability of the party against whom it is obtained. "Like every other judgment, it is conclusive of every fact necessary to uphold it." This Court cannot go behind the judgment by default to examine into and determine upon the validity of the cause of action upon which suit is instituted, and any testimony offered to contradict liability is inadmissible.

(Citations omitted.) Thus, the district court's judgment was final and, after thirty days, only could be revised upon a showing of fraud, mistake, or irregularity. *See Tandra S. v. Tyrone W.*, 336 Md. 303, 313, 648 A.2d 439 (1994), MD. RULE 2–535(b) (1998); MD.CODE (1998 Repl.Vol.), CTS. & JUD. PROC. (C.J.) § 6–408.[3]

---

**3.** No action was taken within thirty days of the district court's March 21, 1997 affidavit judgment. Muller died on April 12, 1997—twenty-two days after the affidavit judgment. The failure to move to vacate may well have been attributed to poor health as well as his ultimate demise. Had a proper motion to vacate been filed timely, we believe that the court could have considered Muller's death and any assertion that he was too ill to attend the hearing. We, therefore, do not pass on the merits of the district court's decision denying the motion to vacate, but rather conclude that this appeal must be decided on the narrow question of the finality of the affidavit judgment.

This conclusion finds further support in our earlier decision of *Gotham Hotels, Ltd. v. Owl Club, Inc.*, 26 Md.App. 158, 337 A.2d 117 (1975). In *Gotham*, we held that "before an equity court may set aside a judgment in law the party attacking the judgment must allege and prove extrinsic fraud, such fraud as ... 'actually prevents an adversarial trial.'" *Id.* at 174, 337 A.2d 117 (citation omitted). In the instant case, the district court's entry of an affidavit judgment against the decedent was a judgment at law and the Orphans' Court exceeded its jurisdiction by setting aside the judgment absent allegations and proof of extrinsic fraud.

There is concern that appellant requested the court to adjudicate its claim and, after being denied, now challenges the court's jurisdiction to exercise such authority. Appellant's Petition for Allowance includes the following:

1. Mary A. Gill, the Decedent's wife, was a resident at [appellant's] nursing home facility. While in the said nursing home, she received services, for which the Decedent agreed to pay, and for which total services were Fifteen Thousand Seven Hundred Fourty-four Dollars and thirty-three cents ($15,744.33) as per the attached bill.

2. The services were proper, and the charges therefore are reasonable and customary.

3. That as a result of nonpayment by the Decedent, [appellant] obtained a judgment against the Decedent in the District Court of Maryland for Montgomery County in the sum of Fifteen Thousand Seven Hundred Fourty-four Dollars and thirty-three cents ($15,744.33) plus attorney's fees of Two Thousand Three Hundred Sixty-one Dollars and sixty-five cents ($2,361.65) and court costs in the amount of Fifty-five Dollars ($55.00) plus post judgment interest. A copy of said judgment is attached herewith.

4. That the total amount due and owing as shown on the attached worksheet is Eighteen Thousand Three Hundred Forty-three Dollars and twenty-six cents ($18,343.26)[.]

5. That the Decedent's estate has not filed a Notice of Disallowance of the claim which was filed on April 23, 1997.

WHEREFORE, [appellant] requests this claim for the balance in the amount of Eighteen Thousand Three Hundred Forty-three Dollars and twenty-six cents ($18,343.26) be allowed.

Although appellant's petition included language stating that "the [d]ecedent agreed to pay" and "the services were proper, and the charges therefore are reasonable and customary," appellant did not request an adjudication of his claim against appellee. Instead, as reflected in the petition, appellant requested the court to allow the claim that had been enrolled as a judgment by the district court.

The court's authority was limited to determining whether there was a valid, unpaid judgment against the decedent. The Orphans' Court's authority is codified in E.T. § 8–107(c), which states:

(c) *By the court.*—If no action is taken by the personal representative disallowing a claim in whole or in part under subsection (a), upon the petition of the personal representative or a claimant, the court shall allow or disallow in whole or in part a claim or claims presented to the personal representative or filed with the register in due time and not barred by subsection (a) of this section. . . .

Appellee did not file any notice disallowing appellant's claim after the claim was filed on April 23, 1997. Pursuant to E.T. § 8–107, appellee's failure to file a notice of disallowance did not affect the lower court's ability to allow or disallow appellant's claim based on whether the claim was valid and unbarred. As discussed above, however, the court was without authority to hold a hearing and perform an independent adjudication of appellant's claim.[4] Therefore, E.T. § 8–107

---

4. We note that, in *Schaefer v. Heaphy*, 45 Md.App. 144, 154, 412 A.2d 107 (1980), this Court stated the following:

A creditor whose claim has been disallowed by the personal representative may litigate the issue in the [O]rphans' [C]ourt; and, if he chooses to do so and is successful, the order of that tribunal is binding upon and enforceable against the personal representative. The deficiency in the authority of the [O]rphans' [C]ourt ... which effectuated its lack or loss of "jurisdiction" has now been overcome.

supports appellant's claim that the court erred by conducting an independent hearing and failing to enter an order directing appellee to pay the claim once it had been reduced to a judgment.

**JUDGMENT OF THE ORPHANS' COURT FOR MONT-GOMERY COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**

*Schaefer*, although holding that the Orphans' Court had jurisdiction over litigation of a personal representative's claim, is distinguishable. In the instant case, appellee did not file a notice of disallowance of appellant's claim; therefore, the claim never was disallowed, preventing litigation of the claim's validity in the Orphans' Court.